**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL WOOD,** | : | **Case No. 2:25-cv-775** |
| **Plaintiff,** | : | |
| **vs.** | : | **Judge Edmund A. Sargus, Jr.** <br> **Magistrate Judge Karen L. Litkovitz** |
| **STEVEN GAUSE, et al.,** | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

Plaintiff Michael Wood is an inmate at the Southeastern Correctional Institution ("SCI") in Lancaster, Ohio, who is proceeding without the assistance of counsel. He filed this civil rights lawsuit against Defendants Steven Gause, Teron Hood, Paul Page, and Johnathan Jordan, in their individual and official capacities for incidents that occurred while Plaintiff was incarcerated at the London Correctional Institution ("LoCI"). (Doc. No. 1).[1] The case has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and the Court's General Order 22-05.

This matter is currently before the Court for an initial screening of Plaintiff's Complaint as required by 28 U.S.C. § 1915A. For the reasons set forth below, the Undersigned **RECOMMENDS** that Plaintiff's individual-capacity Eighth Amendment excessive force claim against Defendant Steven Gause be permitted to **PROCEED** and that the remainder of Plaintiff's

[1] The Court takes judicial notice that in a separate 42 U.S.C. § 1983 civil rights case filed by Plaintiff in this Court, targeting a different incident but raising many claims similar to the claims raised here, the Honorable Caroline H. Gentry recently issued a Report and Recommendation recommending that Plaintiff's claims be denied and his Complaint dismissed. *Michael Wood v. Annette Chambers Smith, et al.*, No. 2:24-cv-165, 2025 WL 3122830

claims be **DISMISSED**.

## I. Screening Standard

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," the Court is required to screen his Complaint. 28 U.S.C. § 1915A(a). The Court must dismiss the complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in Plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is required to construe a pro se complaint liberally and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 329 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]). Even with such liberal construction, a pro se complaint must still

(S.D. Ohio Nov. 7, 2025). Plaintiff filed objections, which remain pending as of the writing of the instant Report and Recommendation. Case No. 2:24-cv-165, Doc. 16.

adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citations omitted). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

## II. Allegations

Plaintiff raises eight stated claims for relief stemming from events that occurred on June 28, 2023. The sequence of events began with a confrontation over an alleged rules infraction, led to the alleged use of excessive force and commission of invasive strip searches, and ultimately resulted in Plaintiff being placed in restricted confinement (with attendant deprivations) for a five-day period. Plaintiff alleges that Defendants' actions were in retaliation for Plaintiff's exercise of his First Amendment right to free expression and petition.

Plaintiff explains that, beginning on May 14, 2023, and continuing through September 21, 2023, LoCI replaced one standing count of prisoners every twenty-four hours, occurring at 9:00 p.m., with three standing counts occurring at 11:00 a.m., 4:00 p.m., and 9:00 p.m., "as an exaggerated response to construction work and the presence of a construction dumpster inside the stockade." (*Id*. at 3). Plaintiff states that those excessive standing counts continued even when no construction work was occurring and no dumpster was present so, Plaintiff claims he was told, "as 'not to confuse the [incompetent] prison guards.'" (*Id.* at 3).

At the time of the June 28, 2023, incident, Plaintiff was housed in an open dorm/garrison style area ("C-1 dorm") with cubical bedding areas and generally uncontrolled free movement. Plaintiff states that C-1 dorm was a recovery services/substance abuse rehabilitation dorm. (*Id*.

at 4). Plaintiff adds that, at this time, there was an institutional memo posted in the common area/day room stating that inmates in the substance abuse rehabilitation dorm who were unable to stand due to medical reasons were exempted from standing count.

On June 28, 2023, during the 4:00 p.m. count, Plaintiff states that Defendant Hood, who was not assigned to work in C-1 dorm, made a general announcement "to commence the standing count by inmates leaving the bedding area, standing in the aisle way, top bunk on right – bottom on left, facing forward, and standing shoulder-to-shoulder at the position of attention." (*Id*. at 3). Plaintiff alleges that this procedure for a standing count had never been used before or since that time. (*Id*.). Plaintiff states that an unknown dorm officer, accompanied by Defendants Hood and Gause, was counting the inmates in C-1 dorm during the 4:00 p.m. announcement made by Defendant Hood.

Plaintiff states he was already standing on the floor at that time at the end of his rack and leaning over his mat reading caselaw from his tablet, while wearing ear buds. Because he was wearing ear buds, he did not hear the general announcement clearly. (*Id*. at 4). He states that he remained in that position, as he had done for every standing count, before and after this standing count, without any problems. He further states that no inmate was standing in exact accordance with Defendant Hood's announcement because, usually, "[a]ll that is required for an official count is for an inmate to be sitting upright or standing so that a prison guard can be positive that they are counting a living, breathing person present as a prisoner." (*Id*.).

Plaintiff states that the dorm officer completed her count of both sides of the area where Plaintiff was standing, without any problem, while Defendant Hood followed behind her and Defendant Gause stayed at the end of the aisle way. Plaintiff also states that Defendant Hood

said nothing to any inmates being counted until Hood "arbitrarily stopped" at the end of Plaintiff's rack and gave an illegitimate and unlawful order for Plaintiff to face forward. (*Id*. at 5). Plaintiff maintains that Defendant Hood singled out Plaintiff in retaliation for "prior negative engagements, filing grievances against him and stating a notice to file lawsuit." (*Id*.). Plaintiff states that Ohio Administrative Code 5120-9-31(G) strictly prohibits retaliation or the threat of retaliation for use of the inmate grievance procedure. Plaintiff insists that Defendant Hood arbitrarily, selectively, and maliciously mistreated, harassed, and demeaned Plaintiff in violation of the Eighth Amendment prohibition against cruel and unusual punishment. (*Id*. (citations omitted)). Plaintiff adds that 31-SEM-02, governing "Personal Conduct," states that "[t]he department" does not tolerate verbally abusive language toward inmates and requires employees to conduct themselves in a courteous and cooperative manner. (*Id*. at 5).

Plaintiff further alleges that he removed his earbuds, turned to his left facing Defendant Hood in the aisle way, and proceeded "with a question to criticize, oppose and challenge" Defendant Hood's arbitrary and unreasonable application of this procedure for conducting the standing count. Plaintiff states that he said to Defendant Hood, "You can see I'm standing, right?" (*Id*. at 5-6). Plaintiff asserts that prisoners have a First Amendment right, as well as a right under Ohio Administrative Code 5120-31(a) providing for an inmate grievance procedure, to file non-frivolous grievances and to criticize public officials orally or in writing. (*Id*. at 6). Plaintiff states that he spoke calmly and did not cause any disruption, disturbance, or interference. He thus maintains that Defendant Hood's engagement was unwarranted because it did not address a legitimate penological interest, and was instead an egregious abuse of power in retaliation for Plaintiff's exercise of the right to file grievances or otherwise criticize public

officials. (*Id*. at 6-8).

The Complaint alleges that Defendant Gause then yelled to Defendant Hood to cuff Plaintiff, "purely in retaliation" for Plaintiff's critical remarks to Defendant Hood. (*Id*. at 8). Plaintiff states that he sat on his footlocker to put his shoes on, then stood and put his hands behind his head and faced away from Defendant Hood "so as to avoid the potential for physical assault which he is known for." (*Id*. (emphasis deleted)). Plaintiff also states that he asked Defendant Hood not to put the cuffs on too tight.

Plaintiff alleges that after Defendant Hood placed cuffs on Plaintiff, Defendant Gause approached and said, "No, we're not going to do that." (*Id.* at 8-9). "Gause then maliciously and sadistically grabbed each cuff in his hands and cinched both into my skin and wrists with intent [to] harass, abuse, cause pain and injury as arbitrary and maliciously motivated punishment in retaliation." (*Id*. at 9). After directing Defendant Hood to continue the standing count, according to Plaintiff, Defendant Gause grabbed Plaintiff, led him out of the dorm, and deliberately pushed Plaintiff into a door before passing him off to an unknown prison guard to initiate the process of placing Plaintiff "in the hole." (*Id*.). The prison guard loosened the cuffs at Plaintiff's request, but Plaintiff states that his wrists were already tingling, and his fingers were already numb. When Plaintiff was placed in a holding cell and the cuffs were removed, the skin on Plaintiff's wrists was red and indented.

Plaintiff further states that during the intake process, he was subjected to two unnecessary, unreasonable, invasive, and dehumanizing strip searches during which his genitals and bodily cavity were inspected by several unnamed co-conspirators. He maintains that these searches were also maliciously motivated, since he could not possibly have had the opportunity

to obtain contraband. (*Id*. at 9-10).

Plaintiff asserts that "[i]n accordance with putting me in the hole in retaliation for my verbal petition, GAUSE and HOOD conspired to manufacture a deliberately false and materially misleading conduct report alleging that [Plaintiff] violated rules 35: Being out of place; and 21: Disobedience of a direct order; to cover-up the actual underlying retaliatory animus." (*Id*. at 10). Plaintiff maintains that the conduct report was deliberately falsified because standing at the end of his rack at the bedding area during a count does not constitute "being out of place"; because the only direct order that Defendant Hood gave Plaintiff was to "face forward," which Plaintiff immediately did; and because none of the alleged supporting facts gave rise to an immediate or direct threat, *i.e.*, a legitimate penological interest, sufficient to warrant the actions taken by Defendants Gause and Hood, as set forth in Ohio Administrative Code 5120-9-06(A).

Plaintiff states that during his five days in the hole, his wrists were swollen and sore, and his right wrist showed bruising. Plaintiff was then brought before Rules Infraction Board ("RIB") members Defendants Paul Page and Johnathan Jordan. Plaintiff alleges these defendants were not attorneys authorized to administer an oath and failed to initiate a recording of the proceedings when Plaintiff first entered the room. (*Id*. at 11). Plaintiff asserts that Ohio Administrative Code 5120-9-08 requires disciplinary hearings to be recorded as soon as the inmate appears. After Defendant Page read the conduct report and gave Plaintiff an opportunity to respond, Plaintiff stated the conduct report was false and issued in retaliation for his speech. At that point, according to Plaintiff, Defendant Page interrupted Plaintiff, saying, "Wo wo wo; let me stop you right there. I just want to let you know right now I'm going to give you five days, credit for time served and let you go. So, the more you talk the longer you're going to be

here." (*Id*. at 11-12). Plaintiff also asserts that once this pre-determined disposition had been made and they began recording, Defendant Jordan "manipulated [Plaintiff's] statement of fact off record and said that [Plaintiff] refused a direct order and was out of place because [Plaintiff] admitted that [he] was not facing forward…." (*Id*. at 12).

Plaintiff complains that he unsuccessfully exhausted a grievance process and essentially suggests that the grievance process is a "remedy" in name only. (*Id*. at 12-13). He also complains that during his five days in the hole (restricted confinement), he was deprived of numerous liberties and privileges that he had previously been afforded—such as the ability to move freely and have access to the bathroom, the gymnasium, the telephone, and the law library—and that his personal property and legal materials were confiscated. (*Id*. at 13-14). He adds that during those 5 days, he was locked in a solitary cell, with another man, for 23 hours a day, and with an all-in-one bathroom/sink/toilet/ shower that afforded no privacy. (*Id*. at 14). "Any time I left the cell," Plaintiff continues, "I was to be subjected to controlled movement and additional unreasonable bodily restraint with hand cuffs." (*Id*.). Plaintiff asserts that this drastic change in his conditions of confinement, in retaliation for his exercise of the right to free speech and to petition, violated his liberty interest in the privileges he had previously been afforded. (*Id*. at 14-15).

In conclusion, Plaintiff states that Defendants Gause and Hood are liable for every claimed constitutional violation stemming from the false conduct report they issued. (*Id*. at 15).

## III. Discussion

Plaintiff raises a claim of Superior Liability against Defendant Gause alleging that Gause initiated a maliciously motivated conspiracy in retaliation for Plaintiff's free expression of

speech and/or petition (Claim I); a claim of Civil Conspiracy against Defendants Gause and Hood for their initiation of the sequence of events that resulted in Plaintiff being placed in restricted confinement for five days (Claim II); an Equal Protection claim against Defendants Gause and Hood alleging that they singled out Plaintiff in retaliation when other prisoners failed to conform with Defendant Hood's standing-count announcement (Claim III); a First Amendment Retaliation claim against Defendants Gause and Hood alleging that they initiated the sequence of events in retaliation for Plaintiff's previous exercise of his first amendment rights and for his verbal petition during the June 28, 2023, incident (Claim IV); a claim of Unnecessary and Unreasonable Bodily Restraint against Defendants Gause and Hood for initiating the application of handcuffs on Plaintiff (Claim V); a claim of Excessive Force and Cruel and Unusual Punishment against Defendant Gause for cinching the handcuffs previously applied by Defendant Hood causing injury to Plaintiff's skin and wrist joints (Claim VI); and a claim of Unnecessary and Unreasonable Strip Search, ostensibly against Defendants Gause and Hood, though actually effectuated by several unnamed co-conspirators (Claim VII). Plaintiff contends that the constitutional violations set forth in Claims I through VII were all committed in violation of his First (free expression of speech and/or petition); Fourth (unreasonable bodily restraint/strip search); Eighth (cruel and unusual punishment); and Fourteenth (substantive due process) Amendment rights with deliberate indifference. (Doc. 1 at 15-17).

Plaintiff raises a Failure to Record (RIB) Proceedings claim against Defendants Page and Jordan (Claim VIII) in violation of his Fourteenth (substantive and procedural due process) Amendment rights with deliberate indifference. (Doc. 1 at 18)

As relief, Plaintiff seeks punitive and compensatory redress in the amount of $1,000,000.

(*Id.* at 1).

Plaintiff raises these claims under 42 U.S.C. § 1983, which requires him to plead "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Community School Dist. Bd. Of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted). At this stage in the proceedings, without the benefit of briefing by the parties, the Undersigned concludes that Plaintiff may **PROCEED** with his individual-capacity Eighth Amendment excessive force claim against Defendant Gause.[2]

Plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. § 1915A(b).

**A. Official Capacity Claims for Damages.**

As a preliminary matter, § 1983 does not permit Plaintiff to bring claims for monetary damages against the Defendants in their official capacities. Section 1983 imposes liability only upon a "person" who, under color of law, subjects another person to a deprivation of federal rights. 42 U.S.C. § 1983. In suits for damages, state officials acting in their official capacity are not "persons" under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff's § 1983 claims for monetary damages against the Defendants in their official capacities, therefore, are not cognizable. *See Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003). Therefore, Plaintiff's claim for monetary damages against Defendants in their official capacities should be dismissed for failure to state a claim upon which relief may be granted.

**B. Superior Liability (Claim I).**

---

[2] The Court has not made a determination as to the merits of the claims or potential defenses thereto, nor are Defendants precluded from filing a motion to dismiss, motion for more definitive statement, or other appropriate motion under the Federal Rules of Civil Procedure. *See, e.g., Wiley v. Austin*, No. 8:20-cv-220, 2020 WL 6204382, at *3 (S. Neb. Oct. 22, 2020).

Plaintiff alleges that that Defendant Gause, as Defendant Hood's supervisor, arbitrarily initiated a conspiracy to harass, punish, and abuse Plaintiff in retaliation for Plaintiff's "free expression of speech and/or petition[.]" (Doc. 1, at 15). Generally, "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). But a supervisor can be held liable under § 1983 if the plaintiff shows "that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct. . . ." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (cleaned up). The plaintiff must also plead and prove a causal connection between the allegedly unconstitutional actions and the plaintiff's injuries. *Crawford v. Tilley*, 15 F. 4th 752, 761-62 (6th Cir. 2021) (citing *Peatross*, 818 F.3d at 242).

Count I should be dismissed because there is no unconstitutional or unlawful conduct for which Defendant Gause can be held liable under a theory of supervisory liability. As explained more fully below, the Complaint fails to plausibly allege constitutional claims against Defendants Gause and Hood relating to Hood's standing-count announcement, in causing Plaintiff to be handcuffed, or in connection with the searches of Plaintiff prior to being placed in restrictive confinement. In addition, the Complaint fails to state a retaliation claim against Defendants Gause and Hood. Therefore, Plaintiff's Claim I Superior Liability[3] should be dismissed for failure to state a claim upon which relief may be granted.

**C. Civil Conspiracy (Claim II).**

---

[3] Plaintiff alleges that the claimed misconduct set forth in claims I through VII also violated his First (free expression of speech and/or petition), Fourth (unreasonable bodily restraint/strip search), Eighth (cruel and unusual punishment), and Fourteenth (substantive due process) Amendment rights with deliberate indifference. (Doc. 1 at 15). The alleged violations of Plaintiff's rights under First, Fourth, Eighth, and Fourteenth Amendments will be

Plaintiff contends that Defendants Gause and Hood conspired to arbitrarily initiate the challenged sequence of events in retaliation for Plaintiff's free expression of speech and right to petition. (Doc. 1, at 15-16). "A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." *Crowley v. Anderson Cnty. Tenn.*, 783 F. App'x 556, 560 (6th Cir. 2019) (cleaned up).

> To prevail on a civil conspiracy claim, [a plaintiff] must show that (1) a "single plan" existed, (2) [the defendant] "shared the general conspiratorial objective" to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused the injury" to [the plaintiff].

*Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (cleaned up). In the Sixth Circuit, "conspiracy claims must be pled with some degree of specificity and [] vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (cleaned up).

Plaintiff's allegations do not state a claim for a civil conspiracy. Plaintiff's allegation that Defendants Gause and Hood conspired to cause his five-day confinement is conclusory and lacks supporting facts. Moreover, the Complaint in this regard contains contradictory assertions: on the one hand, it alleges Gause's and Hood's actions were arbitrary, and on the other hand, it alleges their action were done in retaliation for Plaintiff's exercising his First Amendment right to denounce Defendant Hood's actions during the standing count. That contradictory assertion undercuts any finding that a single plan was devised or that the Defendants possessed the requisite "meeting of the minds." Plaintiff also fails to identify the deprivation of a constitutional or statutory right. Therefore, Plaintiff's Claim II Civil Conspiracy count should be dismissed for failure to state a claim upon which relief can be granted.

---

addressed in connection with his stated claims below.

**D. Equal Protection (Claim III).**

Plaintiff alleges that in initiating the challenged sequence of events, Defendants Gause and Hood singled Plaintiff out for "selective enforcement when numerous others prisoners obviously also failed to conform" to Hood's standing-count announcement. (Doc. 1, at 16). Generally, "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (cleaned up). Stating an equal protection claim under this theory requires a prisoner to allege sufficient plausible facts to show "that a state actor intentionally discriminated against [him] because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (cleaned up), *abrogated in part on other grounds by King v. Harwood*, 853 F.3d 568, 580 n.4 (6th Cir. 2017); *see also Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000). Alternatively, a plaintiff can state a "class-of-one" equal protection claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Franks v. Rubitschun*, 312 F. App'x 764, 766 (6th Cir. 2009) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)); *see also Ervin v. Davis*, No. 2:16-cv-186, 2017 WL 2573251, at *4 (S.D. Ohio June 14, 2017).

Plaintiff fails to plead sufficient facts in his Complaint to state an equal protection claim under either theory. As a preliminary matter, the Complaint does not allege that Plaintiff was discriminated against due to his membership in a protected class. As for the "class-of-one" theory, Plaintiff states that numerous other prisoners "obviously" were not complying with Defendant Hood's standing-count directive. (Doc. 1 at 16). The Court is unable to reasonably

infer from this single, conclusory statement that Plaintiff was treated differently than other similarly situated inmates. Plaintiff fails to allege any facts showing that the prisoners who were treated differently were similar in all relevant respects. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011). His allegations are "little more than 'legal conclusions couched as factual allegations' and need not be accepted as true under Rule 12(b)(6) scrutiny." *Rondigo*, 641 F.3d at 684 (quoting *Twombly,* 550 U.S. at 555). Therefore, Plaintiff's Claim III Equal Protection count should be dismissed.

**E. First Amendment Retaliation (Claim IV).**

Plaintiff alleges that Defendants Gause and Hood arbitrarily initiated the June 28, 2023, sequence of events in retaliation for Plaintiff's previous grievances and for his verbal statement to Defendant Hood during standing-count. (Doc. 1 at 16). Retaliation claims are properly analyzed under the First Amendment. This claim requires a plaintiff to show three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

Plaintiff's Complaint alleges two instances of protected activity. First, Plaintiff alleges Hood singled him out for scrutiny and ordered him to "face forward" because of "prior negative engagements, filing grievances against him and stating a notice to file lawsuit." (Doc. 1 at 5). Second, Plaintiff alleges he turned to face Hood and stated, "You can see I'm standing, right?"

(*Id.*). The Complaint fails to state a plausible First Amendment retaliation claim based on these two incidents.

With respect to the first instance, the Complaint fails to allege facts showing protected activity and a causal connection between Hood's actions and Plaintiff's "prior negative engagements, filing grievances against him and stating a notice to file lawsuit." (Doc. 1 at 5). Plaintiff fails to explain what he means by "prior negative engagements" or "stating a notice to file lawsuit." Plaintiff does not allege who was involved, when these incidents occurred, or any of the factual circumstances surrounding these activities. The Complaint gives no factual context or content to enable the Court to conclude that the "prior negative engagements" and "stating a notice to file lawsuit," without more, constitute protected activity for purposes of a First Amendment claim.[4] That leaves Plaintiff's grievances.

"An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (citing *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996)). "This right is protected, however, only if the grievances are not frivolous." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996) ("Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.")). Therefore, Plaintiff's pursuit of grievances against Hood is protected conduct only to the extent that the underlying grievances are not frivolous. However, the Complaint fails to allege any facts about the grievances Plaintiff filed to

---

[4] Clearly, if plaintiff threatened to file a lawsuit against Hood, such a threat would constitute protected activity under the First Amendment. *See Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (reiterating that a threat to sue is protected conduct); *Dean v. Conley*, 1999 WL 1045166, at *2 (6th Cir. Nov. 9, 1999) (unpublished table decision) (holding that a threat to sue is protected conduct). But the Complaint alleges no facts whatsoever explaining the circumstances and involvement of Defendant Hood, if any, relating to this allegation. The Court is not required to supply or assume facts that would turn a claim into one that is plausible but must screen the Complaint as actually filed.

enable the Court to conclude they were non-frivolous. Therefore, Plaintiff fails to satisfy the protected conduct prong of his First Amendment retaliation claim.

Even if the Complaint plausibly alleged protected conduct, Plaintiff fails to allege any facts showing a causal connection between the "prior negative engagements, filing grievances against him and stating a notice to file lawsuit" and Defendant Hood's actions. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted). Further, "an inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002)). To allege a causal connection, the Complaint at a minimum must contain nonconclusory allegations showing that Hood was aware of the alleged grievances or "notice to file a lawsuit" against him, the temporal proximity between the protected conduct and the adverse action, or some other facts showing a plausible connection between the protected conduct and the adverse action. *Cf. King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (temporal proximity between protected conduct and retaliatory act may create inference of retaliatory motive). Plaintiff's allegation that Defendant Hood was motivated to retaliate against Plaintiff is wholly conclusory and unsupported by any facts giving rise to an inference of causation. In the absence of allegations supporting a causal link between the protected activity and Defendant' Hoods actions, Plaintiff's retaliation claim based on this first instance should be dismissed.

Plaintiff's second instance of retaliation is based on Plaintiff's allegation that during the

standing-count procedure, Hood ordered Plaintiff to "face forward" and Plaintiff responded by turning to face Hood and stating, "You can see I'm standing, right?" (Doc. 1 at 6). While an inmate has the right to pursue an oral grievance, *Maben*, 887 F.3d at 265, Plaintiff's question does not amount to protected activity. As one court explained:

> Since this case arose in prison, the court views plaintiff's First Amendment claim in the prison context. "[T]he constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy,* 532 U.S. 223, 229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). "In the First Amendment context, for instance, some rights are simply inconsistent with the status of a prisoner or with the legitimate penological objectives of the corrections system." *Id.* (internal quotation marks omitted). For example, in *Huff v. Mahon,* 312 Fed. Appx. 530 (4th Cir. 2009), the court affirmed a district court's determination that "[a]n inmate does not have a First Amendment right to direct disrespectful comments to a prison official, whether verbally or in writing, because the prison's legitimate penological interests in promoting order and discipline, and in controlling violence clearly necessitate the prohibition of such comments."

*Davis v. Straub*, No. 1:07-cv-156, 2009 WL 4908433, at *8 (W.D. Mich. Dec. 11, 2009). Likewise, "backtalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected conduct." *Kervin v. La Clair Barnes*, 787 F.3d 833, 835 (7th Cir. 2015). *See also Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (noting that words, actions, or other behavior which is intended to harass, degrade, or cause alarm in a prison official is not protected conduct); *Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008) (insubordinate remarks that are "inconsistent with the inmate's status as a prisoner" are not protected); *Jones v. Pummill*, No. 2:16-cv-519, 2017 WL 1078627, at *2 (S.D. Ohio Mar. 22, 2017), *report and recommendation adopted,* 2017 WL 1710529 (S.D. Ohio May 3, 2017) (comment made by inmate, even though not as offensive as cursing, yelling, or swearing, was confrontational and adversarial, made in a face-to-face setting with prison official where other inmates were present,

and not protected). Plaintiff's question to Defendant Hood amounted to a rebuke of Hood and insinuated that Hood's order was unnecessary and unwarranted. This is the type of backtalk and insubordinate or impertinent questioning that, in the prison setting with other inmates present, runs afoul of legitimate penological objectives and does not constitute protected conduct. Therefore, the Complaint fails to state a plausible claim for retaliation based on the second instance alleged by Plaintiff. Accordingly, Plaintiff's retaliation claim should be dismissed.

**F. Unnecessary/Unreasonable Restraint (Claim V).**

Plaintiff complains that Defendants Gause and Hood conspired to arbitrarily initiate the unreasonable application of handcuffs for the purpose of bodily restraint in retaliation for his criticism of Defendant Hood's standing-count announcement. (Doc. 1 at 17). As explained above, Plaintiff does not allege a plausible retaliation claim against Defendant Hood based on Plaintiff's questioning of Hood's order to "face forward." To the extent this claim may be construed as an Eighth Amendment claim against Defendant Hood, the Complaint fails to state a plausible claim for relief against Defendant Hood.[5]

The Eight amendment prohibits the unnecessary and wanton infliction of pain against prisoners. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). To state a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component. *Williams*, 631 F.3d at 383 (citing *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993)).

To satisfy the objective component, the prisoner must demonstrate that pain inflicted was "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). That said, the seriousness of

[5] As noted previously, Plaintiff's Eighth Amendment excessive force claim against Defendant Gause is permitted to proceed at this juncture.

the injuries alleged is not itself dispositive. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated … [w]hether or not significant injury is evident." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolical or inhuman, inflicting less than some arbitrary quantity of injury." *Id*.

The subjective component focuses on the state of the mind of the prison officials. *Williams*, 631 F.3d at 383. The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7).

Here, Hood's application of handcuffs to Plaintiff's wrists was for a limited duration of time, in connection with a suspected rules infraction, and while being transported for disciplinary proceedings. Plaintiff's allegations fails to satisfy the objective component of an Eighth Amendment claim against Defendant Hood. Plaintiff does not allege that Defendant Hood's initial application of the handcuffs caused pain, lasting injury, or was inflicted in a malicious or sadistic manner. In fact, the Complaint suggests that Defendant Hood complied when Plaintiff asked Hood not to cinch the handcuffs too tightly. (Doc. 1 at 8). This de minimus use of physical restraint does not raise constitutional concerns. *See, e.g., Wilkins*, 559 U.S. at 37-38; *see also Carlton v. Turner*, No. 05-1009, 2006 WL 955886, at *2 (6th Cir. Apr. 12, 2006).

Therefore, Plaintiff's Claim V Unnecessary/Unreasonable Bodily Restraint count should be dismissed for failure to state a claim upon which relief may be granted.

**G. Unnecessary/Unreasonable Invasive Strip Search (Claim VII).**

Plaintiff alleges that he was subjected to two "unnecessary/unreasonably invasive" strip searches by "unnamed co-conspirators" (Doc. 1 at 9-10), and Defendants Gause and Hood "arbitrarily conspire to initiate the 'maliciously motivated' sequence of events . . . resulting in multiple unreasonable, invasive strip searches." (*Id*. at 17). Prison inmates may be strip-searched under circumstances that are reasonably related to the legitimate penological interest of security and order. *See Roden v. Sowders*, 84 F. App'x 611, 613 (6th Cir. 2003) (citing *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992)).

Here, Plaintiff's claim fails because he offers no plausible allegations from which the Court could conclude any personal involvement by Defendant Gause or Defendant Hood. "The Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did that violated the asserted constitutional right.'" *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original)). Thus, "[w]here a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints." *Catanzaro v. Harry*, 848 F. Supp. 2d 780, 791 (W.D. Mich 2012) (citation omitted).

Plaintiff does not allege that Defendants Gause and/or Hood personally conducted the unreasonable, invasive strip searches set forth in the Complaint. Nor does he allege or suggest that these Defendants directed the strip searches or otherwise caused the searches to be conducted. Rather, he alleges that both initiated the actions leading to his discipline and subsequent strip searches. That is not enough to show personal involvement. In addition,

Plaintiff's conclusory allegations suggesting that the "unnamed co-conspirators" conspired with Gause and Hood are insufficient to state a claim for conspiracy to conduct an unlawful strip search. *Fieger*, 524 F.3d at 776. Therefore, this claim should be dismissed for failure to state a claim upon which relief may be granted.

**H. Failure to Record (Claim VIII).**

Plaintiff contends that Defendants Page and Jordan violated his Fourteenth Amendment right to substantive and procedural due process when they refused to commence recording at the outset of the RIB hearing. (Doc. 1 at 18).

Substantive due process provides that "irrespective of the constitutional sufficiency of the processes afforded, government may not deprive individuals of fundamental rights unless the action is necessary and animated by a compelling purpose." *Schulkers v. Kammer*, 955 F.3d 520, 539 (6th Cir. 2020) (quoting *Bartrell v. Lohiser*, 215 F.3d 550, 557-58 (6th Cir. 2000)). To prove such a claim, Plaintiff "would need to establish either (1) 'deprivations of a particular constitutional guarantee,' or (2) government actions that 'shock the conscience.'" *Garner v. Harrod*, 656 F. App'x 755, 761 (6th Cir. 2016) (quoting *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011)). Plaintiff does not allege the deprivation of a constitutional guarantee or any actions that were conscience-shocking. Therefore, the Complaint does not state a plausible substantive due process claim based on his allegations of irregularities in the RIB proceedings.

Plaintiff has also failed to state a plausible procedural due process claim against any of the defendants because the allegedly false conduct report and disciplinary proceedings did not amount to a deprivation of a constitutionally protected liberty interest. In *Sandin v. Conner*,

515 U.S. 472 (1995), the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002). The Sixth Circuit has held that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's Complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (holding that the prisoner's 8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process"). *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

Here, Plaintiff has not alleged that the challenged disciplinary proceedings resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. Moreover, Plaintiff has not alleged any facts to suggest that he was subjected to a lengthy disciplinary placement amounting to an atypical or significant hardship that would

trigger constitutional concerns. The prison discipline that Plaintiff alleges he received—five days in segregation—does not constitute "atypical and significant hardship" in relation to the ordinary course of prison life. *See, e.g., Miles v. Helinski,* No. 20-1279, 2021 WL 1238562, at *4 (6th Cir. Jan. 29, 2021) (disciplinary sanctions of five days' toplock and five days' loss of privileges did not implicate a liberty interest requiring due process safeguards). Accordingly, because Plaintiff does not have a protected liberty interest under the circumstances alleged herein, the Complaint against Defendants Page and Jordan fails to state a cognizable federal claim under the Fourteenth Amendment's Due Process Clause.

Plaintiff has also not stated a constitutional claim to the extent he has alleged that Gause and Hood wrote the false conduct report which resulted in disciplinary sanctions imposed by the RIB. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See Frost v. Dep't of Rehab. & Correction*, No. 20-4146, 2021 WL 5021042, at *2 (6th Cir. June 1, 2021) (citing *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *4 (6th Cir. Apr. 23, 2019); *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003)). *See also Reeves v. Mohr*, No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Reeves, supra*, 2012 WL 275166, at *2 (citing *Sandin*, 515 U.S. at 485). However, as noted above, Plaintiff's allegations are insufficient to trigger constitutional concerns because he has not alleged any facts

even remotely suggesting that the challenged disciplinary action deprived him of a protected liberty interest.

For these reasons, the Complaint fails to state plausible due process claims, and Plaintiff's Claim VIII Failure to Record count should be dismissed.

## IV. Conclusion

Having screened the Complaint as required by 28 U.S.C. 1915A(a), the Undersigned **RECOMMENDS** that Plaintiff's individual-capacity Claim VI Excessive Force/Cruel and Unusual Punishment count against Defendant Gause be permitted to proceed. The Undersigned further **RECOMMENDS** that Plaintiff's remaining claims be **DISMISSED** for failure to state a claim upon which relief may be granted.

## V. Notice Regarding Objections to this Report and Recommendation

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections **within fourteen days** after being served with a copy thereof. Fed. R. Civ. P. 72(b). All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. The Court may extend the fourteen-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made. Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a

waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

November 21, 2025

Karen L. Litkovitz
United States Magistrate Judge